**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MARY VOTAW, )
)
          Plaintiff, )
) CIVIL ACTION
v. )
) No. 12-1111-JWL
CAROLYN W. COLVIN,[1] )
Acting Commissioner of Social Security, )
)
          Defendant. )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the ALJ's consideration of Plaintiff's asthma and of the limitations resulting therefrom, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's decision, and REMANDING for further proceedings.

**I.    Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSI benefits on October 28, 2008, alleging disability beginning January 1, 2000. (R. 13, 153-56). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 13, 52-53, 70-72). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Robert J. Burbank on January 20, 2011. (R. 13, 27-28). At the hearing, testimony was taken from Plaintiff, and a vocational expert appeared but did not testify. (R. 13, 27-51). On February 18, 2011 ALJ Burbank issued a decision in which he found that although Plaintiff has severe impairments and has no past relevant work, when considering her age, education, work experience and residual functional capacity (RFC), jobs exist in significant numbers in the national economy that she can perform. (R. 13-20). Therefore, he concluded that she is not disabled within the meaning of the Act, and denied her application for SSI benefits. (R. 20). Plaintiff sought but was denied Appeals Council review of the ALJ's decision (R. 1-9); that decision became the final decision of the Commissioner (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review of the decision pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting

identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 1382c(a)(3).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 416.920 (2010);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

---

[2]Because the Commissioner's decision in this case was issued on February 18, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

4

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in finding certain of her impairments are not severe at step two of the evaluation process; erred in assessing an RFC which is neither based upon a function-by-function assessment of Plaintiff's ability to do work-related activities nor supported by substantial record evidence; erred in evaluating the opinion of her primary care physician, Dr. Bohm; and erred in evaluating the credibility of Plaintiff's allegations of symptoms resulting from her impairments. The Commissioner responds to each of Plaintiff's allegations, arguing that substantial evidence supports the step two finding that Plaintiff has severe impairments, and that Plaintiff has not shown additional limitations resulting from her allegedly severe impairments; that substantial record evidence supports the RFC limitations assessed by the ALJ; that substantial record evidence supports the ALJ's finding that Dr. Bohm's "opinion was 'based more on subjective complaints by the claimant than actual evidence in the file' " (Comm'r Br. 12)

5

(quoting R. 18); and that the ALJ properly evaluated the credibility of Plaintiff's allegations. The court finds that remand is necessary because the ALJ erred in assessing Plaintiff's asthma and in considering the limitations resulting therefrom. Because a proper evaluation of Plaintiff's asthma on remand will require reconsideration of Dr. Bohm's opinion and of Dr. Siemsen's opinion, because reassessment of Plaintiff's RFC will be necessary after properly considering Plaintiff's asthma, and because each of the other errors alleged by Plaintiff are included in a proper assessment of RFC, in this opinion the court will not address all of the errors asserted by Plaintiff. Plaintiff may make her arguments with regard to other alleged errors to the Commissioner on remand.

## III.    Error in the Step Two Evaluation

Plaintiff claims that the ALJ erred at step two of the sequential evaluation process by finding that her headaches and asthma are not "severe" impairments within the meaning of the Act and by failing to find that degenerative changes in her lumbar spine and right knee are "severe" impairments within the meaning of the Act. (Pl. Br. 14-17). Plaintiff points to medical records showing consistent treatment for her headaches, including an occipital nerve injection. (Pl. Br. 14). She points to medical records showing treatment and pulmonary function testing as a result of her breathing difficulties, and to Dr. Letourneau's finding of "fairly moderate to severe COPD" (chronic obstructive pulmonary disease). (Pl. Br. 15-16) (citing R. 518). She points out that Dr. Siemsen, an agency physician, assessed her primary diagnosis as "asthma," and opined that she should avoid concentrated exposure to extreme heat and cold, and to fumes, odors, dusts, gases,

6

poor ventilation, etc. due to her breathing problems. Id. at 15 (citing R. 468, 472). Finally, Plaintiff points to medical records documenting her complaints of back pain and knee pain, and to reports of x-rays showing degenerative changes in her right knee and in her lumbar spine. (Pl. Br. 16). She argues that this "medical evidence clearly shows [her] impairments are severe and cause more than a minimal effect on her ability to perform basic work activity." Id. at 17.

In response, the Commissioner points out that the ALJ found at step two that Plaintiff has fibromyalgia which he found to be "severe" in the circumstances of this case. She notes that the ALJ "acknowledged that Plaintiff's fibromyalgia led to complaints of pain in her 'back, knees and shoulders,' difficulty sleeping, weakness in her leg, and that she had to lie down several times per day [due] to fibromyalgia symptoms." (Comm'r Br. 5) (quoting R. 17). Citing Hill v. Astrue, 289 F. App'x 289, 292 (10th Cir. 2008), the Commissioner argues that once an ALJ has found any severe impairment at step two of the sequential evaluation process a failure to find that additional impairments are severe is not error requiring reversal if the ALJ has considered all of the claimant's alleged limitations. (Comm'r Br. 5). She argues that the practical effect of this standard is that, rather than showing merely that she has additional severe impairments, "Plaintiff must show that the ALJ overlooked some specific additional limitation not already included" in the RFC assessed, and she argues that Plaintiff has not made that showing in this case. Id. The Commissioner then argues that although Plaintiff has shown treatment for headaches, breathing difficulties, and back and knee pain, she has not shown limitations resulting

7

from those impairments which are not included in the RFC assessed by the ALJ. Id. at 5-7. Although much of the Commissioner's argument may be correct as it relates to headaches and to back and knee pain, the court finds that Plaintiff has presented record evidence suggesting limitations resulting from asthma or COPD which the ALJ did not discuss and for which there is little if any evidence that the ALJ considered. This is error requiring remand for the Commissioner to properly consider the functional limitations, if any, resulting from Plaintiff's asthma or COPD.

### A.     Standard for Step Two Evaluation

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d 748, 751 (10th Cir. 1988). However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from

engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

The claimant in Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008), argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Again, in Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

**B.    Analysis**

Plaintiff points to treatment for her headaches and asserts that those headaches are additional severe impairments; but, as the Commissioner argues, the mere presence of an impairment will not suffice to establish that the impairment is severe within the meaning of the regulations. And Plaintiff does not cite record evidence showing functional limitations resulting from her headaches which are more restrictive than the RFC assessed by the ALJ. Therefore, in accordance with the teaching of Brescia and Hill the failure to

identify headaches as a severe impairment in this case is not error requiring remand. Moreover, as the Commissioner argues, the ALJ acknowledged both Plaintiff's back and knee pain (R. 17) and the x-rays revealing degenerative changes in her knee and in her lumbar spine (R. 18), and he considered that pain and those x-rays when assessing functional limitations. Plaintiff does not point to record evidence revealing greater limitations resulting from those impairments than those assessed by the ALJ. Therefore, the failure to find that the degenerative changes in her knee and in her lumbar spine are severe impairments is not error requiring remand.

However, with regard to her breathing difficulties, Plaintiff points to record evidence suggesting limitations more restrictive than those assessed by the ALJ. As to physical limitations, the ALJ assessed Plaintiff with the "capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a)." (R. 16). Yet, as Plaintiff points out, Dr. Siemsen, the state agency physician who reviewed the record for the Commissioner found that Plaintiff's primary diagnosis was "asthma" (R. 468), and opined that this impairment necessitated that Plaintiff "avoid concentrated exposure" to extreme cold, to extreme heat, and to fumes, odors, dusts, gases, poor ventilation, etc. (R. 472).

The Commissioner attempts to discount the effect of Dr. Siemsen's opinion, arguing that Dr. Siemsen is a non-examining doctor and that "none of Plaintiff's own doctors ever told her she needed to avoid such conditions, including her own pulmonologist, who only told her that she should stop smoking." (Comm'r Br. 7) (citing R. 520, 526) (Dr. Kanchwala reporting he provided "extensive counseling" to help

10

Plaintiff stop smoking). However, the Commissioner ignores the treating source, Dr. Bohm's, Medical Source Statement in which he opined the Plaintiff should "avoid any exposure" to extreme heat, extreme cold, and dust/fumes, and should "avoid moderate exposure" to weather or to wetness/humidity. (R. 412). The environmental limitations opined by Dr. Siemsen and Dr. Bohm are limitations greater than those in the RFC assessed by the ALJ in this case, and the ALJ did not discuss these limitations or explain why they are not appropriate in the circumstances of this case.

The Commissioner argues that even if the environmental limitations opined by Dr. Siemsen (and by extension, Dr. Bohm) were accepted by the ALJ, it was nevertheless "reasonable for the ALJ to conclude Plaintiff can perform sedentary work" because "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards." (Comm'r Br. 7) (quoting Soc. Sec. Ruling (SSR) 96-9p). However, the Commissioner ignores that Dr. Siemsen and Dr. Bohm also opined regarding environmental limitations from exposure to fumes, odors, dusts, gases, poor ventilation, etc.

SSR 96-9p, to which the Commissioner appeals, also provides that in addition to restricted noise levels, "Restrictions to avoid exposure to odors or dust must also be evaluated on an individual basis. The RFC assessment must specify which environments are restricted and state the extent of the restriction; e.g., whether only excessive or even small amounts of dust must be avoided." SSR 96-9p, West's Soc. Sec. Reporting Serv., Rulings 160 (Supp. 2012). If the environmental limitations from exposure to fumes,

odors, dusts, or gases opined by Dr. Siemsen and Dr. Bohm were accepted, the RFC must state the extent of the limitations, and the services of a vocational source would be necessary to determine the extent of erosion to the sedentary occupational base resulting from such limitations. SSR 85-15, 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 351-52 (1992). The decision does not indicate that the environmental limitations opined by Dr. Siemsen and/or Dr. Bohm were accepted by the ALJ, and the proceedings in this case do no include testimony of a vocational expert or demonstrate reliance upon any other vocational source to determine the extent of erosion to the sedentary occupational base due to those environmental limitations.

Because the ALJ determined to accord only "partial weight" to Dr. Bohm's opinion (R. 18) and "some weight" to Dr. Siemsen's opinion (R. 19), it might be argued that the environmental limitations opined by those physicians were rejected by the ALJ in this case. However, if an ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 150 (Supp. 2012). Here, there is no indication the ALJ even recognized that the physicians had opined regarding environmental limitations, and the ALJ did not explain why he rejected those environmental limitations.

With regard to Dr. Bohm, the ALJ stated that his treatment notes indicate that Plaintiff has pain in her legs and lower back and that he prescribed Lyrica for Plaintiff's condition. (R. 17). The ALJ recognized Dr. Bohm's opinions that Plaintiff could lift less than five pounds and that she could only sit, stand, and walk two hours in a workday; and

he discounted those opinion because they are "based more on subjective complaints by the claimant than actual evidence on file." (R. 18). However, the decision says nothing about the environmental limitations opined by Dr. Bohm and it does not provide a reason for rejecting them.

A similar rationale applies to the opinion of Dr. Siemsen. Dr. Siemsen opined that Plaintiff was able to meet the exertional requirements for light work, including the ability to frequently lift ten pounds, to occasionally lift twenty pounds and to stand and/or walk, and to sit about six hours in a workday. (R. 469). The ALJ determined that Plaintiff has the residual functional capacity for sedentary work, meaning that she can lift no more than ten pounds and that she can stand and/or walk only occasionally (about two hours in a workday). (R. 16). Here is the ALJ's entire discussion of Dr. Siemsen's opinion:

> In terms of opinion evidence, the opinion of Gerald Siemsen M.D. regarding the claimant's physical capacity is given some weight. The claimant testified to having trouble lifting pots and pans due to pain and noted that it hurts to lift her arms to wash her hair. Medical evidence in file regarding the claimant's back condition supports her allegations of lifting limitations as well as placing some restrictions on her ability to sit and stand for any prolonged period (Exhibit 22F [(R. 468-75)]).

(R. 19). This discussion, in context, makes clear that the ALJ found that the evidence demonstrates that Plaintiff's lifting, standing, and walking abilities are more limited than Dr. Siemsen's opinion suggests. It indicates that the ALJ discounted Dr. Siemsen's opinion to that extent. However, it says nothing about the environmental limitations opined by Dr. Siemsen and it does not provide a reason for rejecting them.

13

The court is left, at least, with Dr. Siemsen's opinion and Dr. Bohm's opinion as record evidence suggesting that Plaintiff has environmental limitations greater than those assessed by the ALJ. Those limitations, if accepted, would reduce the occupational base for sedentary work of which the ALJ found Plaintiff capable. Moreover, there is nothing in the decision justifying rejection of those environmental limitations. Therefore, remand is necessary for the Commissioner to determine the environment limitations, if any, to which Plaintiff is subject, to determine the effect of those limitations on the occupational base for sedentary work, and to determine whether there are a significant number of jobs in the national economy that Plaintiff can perform given her RFC.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's decision below, and REMANDING this case for further proceedings consistent with this opinion.

Dated this 30th day of May 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**